**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

JAMES A. ORTON, JR.,

    PLAINTIFF,

VS.                                               CASE NO.: CV-10-J-309-J

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

## **MEMORANDUM OPINION**

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

### **Procedural Background**

The plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") due to a prior heart attack, obesity, his arms and legs hurting, and high blood pressure (R. 88). He also suffers from post traumatic stress syndrome, anxiety and depression, although these were not listed as disabling conditions in his disability report (R. 40, 123, 131, 232, 233).

The administrative proceedings leading to this action began on March 23, 2006, when the plaintiff filed an applications for DIB and SSI, which were denied (R.

58-65). The plaintiff requested a hearing, which was held in front of an administrative law judge ("ALJ") on August 8, 2007 (R. 32-56). The ALJ thereafter rendered an opinion finding that the plaintiff was not under a disability (R. 12-23). The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied on June 24, 2009 (R. 1-3). The ALJ's decision thus became the final order of the Commissioner of Social Security. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1).

The court has considered the record and the briefs of the parties. For the reasons set forth herein, this case is **REVERSED and REMANDED** to the Agency to further develop the record as instructed herein.

**Factual Background**

The plaintiff was born December 22, 1957, and quit school in the seventh grade (R. 37-38). He last worked March 5, 2006, as a debarker operator for a lumber company, but could not handle the stress and had pain in his hands, arms and shoulders (R. 38, 40). He passed out while operating the debarker and his doctor put him in the hospital (R. 47). The plaintiff testified he could not handle being around people and takes medication for anxiety, but the medicine does not help (R. 41, 45). He spends his days sitting in his bedroom (R. 42, 45).

The plaintiff sought mental health treatment, but he did not understand most of what he was told (R. 43). He was referred to John Lancaster for treatment, but did not follow through with this referral because he had been treated by Dr. Lancaster previously for sex offender treatment (R. 44). The plaintiff completed that treatment and his current problem was that he was having "dreams and flashbacks during the daytime and just about driving me crazy. It's still driving me crazy" (R. 44). He explained that he feels "like I ain't worth nothing, and I just -- I do. I feel guilty and just feel like I ain't worth even being in the human race. I'm sorry" (R. 46). He did not follow through with mental health treatment because he did not have the money to go (R. 50-51). The ALJ confirmed with the plaintiff that he only listed weight and hypertension on his Social Security applications (R. 50).

The plaintiff testified that he has "been able to do nothing. I can't hold a wrench in my hand. I can get and start and then my hands and my fingers and all just get to hurting so bad, my wrists, and the horse, I can't -- I can't get up on one now. I can't stand to ride one now (R. 48). He stated he has arthritis in his hands, shoulders, lower back, hips, kneecaps, and feet (R. 49). The plaintiff said he could walk about ten feet, or about ten minutes at a time, and can sit for ten to fifteen minutes at a time before his hips hurt (R. 49). He cannot stand much because his feet give out on him, but guessed he could stand for ten to fifteen minutes (R. 50).

The medical evidence in the record is sparse. His treatment records reflect diagnoses of chronic anxiety and high blood pressure (R. 131, 133, 135-136, 252, 259), diabetes (R. 133, 135, 264), depression and PTSD (R. 232, 237, 240, 257), osteoarthritis in both knees (R. 232, 252), shoulder arthritis (R. 250-251, 252), and anginal chest pain (R. 140). In 2005 records reflect plaintiff's report that his legs, ankles, and hips "locked up on him" (R. 167). At the time, he was diagnosed with arthralgia, fatigue, insomnia, and other ailments (R. 168). He reported to his doctor that he had muscle cramps in his chest, back, left leg, and hip, and that he passed out at work in February 2006 (R. 153). In June 2007 the plaintiff stated that his medication was not effective, that he had bilateral shoulder, hand, knee and neck pain, that he had episodes of depression and nightmares and flashbacks from the late '60s and early '70s (R. 259).

An Intake Narrative Report from the Winston County Mental Health Center in July 2006 reflects the plaintiff was referred back to John Lancaster because of his prior conviction as a sex offender (R. 262). This report also reflects diagnoses of chronic PTSD, rule out bi-polar disorder, and assigns plaintiff a Global Assessment of Functioning score of 35-40[1] (R. 262).

---

[1]A score of 31-40 reflects:

Some impairment in reality testing or communication ( e.g., speech is at times illogical, obscure, or irrelevant ) OR major impairment in several areas, such as

The plaintiff argues that the opinion of the ALJ is not supported by substantial evidence and improper legal standards were applied.  Plaintiff's memorandum at 1.  The plaintiff faults the ALJ for failing to consider the plaintiff's mental impairments other than depression.  Plaintiff's memorandum at 6. In his opinion, the ALJ found

> The claimant also alleges severe anxiety.  This is not supported in the record.  Doctor Simieritsch's records rarely mention anxiety.  The claimant testified that he did not know why he was not being treated for this.  The claimant also testified that he did not tell SSA about any problems other than obesity and hypertension.[2]  The claimant sought mental health treatment at the mental health center, where he was referred for further treatment due to his prior conviction as a sex offender.  The claimant did not follow up with further treatment, thus suggesting that the claimant's symptoms were not as serious as he alleges.  This is further supported by the claimant's treating physician's conservative mental health treatment.

(R. 20-21).

The ALJ also fails to list plaintiff's diagnosis of osteoarthritis as a disabling condition because "this appears to be based primarily on the claimant's subjective

---

work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

*Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. 2000, American Psychiatric Association.

[2]With a few exceptions, the claimant is allowed to present new evidence at each stage of the administrative process. *See Ingram v. Commissioner of Social Sec. Admin*.,  496 F.3d 1253, 1261 (11th Cir.2007), citing 20 C.F.R. § 404.900(b).

complaints" (R. 20). The ALJ also found that the plaintiff has a high school education (R. 21) although the evidence on this issue is that the plaintiff quit school during the seventh grade when he was 13 or 14 years old (R. 37-38). Having thus ignored most of the sparse evidence in the record, the ALJ determined that the plaintiff could perform a limited range of unskilled light work, with additional limitations of a sit/stand option, no travel, no commercial driving, only simple work related decisions, limited contact with supervisors, co-workers and the public, and other exertional limitations (R. 19).

The ALJ opined that while the plaintiff "received some mental health treatment from his treating physician ... there is no indication that he was being treated for anxiety" (R. 18). The ALJ also surmises that "there is no indication of any intensive mental health treatment that one would expect if a person had a mental impairment that met a listing" (R. 18). Additionally, in spite of the plaintiff's testimony that he spent his days sitting in his bedroom, the ALJ found the plaintiff to have a "mild" restriction of activities of daily living and "moderate difficulties" with social functioning (R. 18). The ALJ also makes the finding that "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of

limitation to the claimant's medical condition, as opposed to other reasons,[3] in view of the relatively weak medical evidence..." (R. 21).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. If the claimant is successful the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59

---

[3]The ALJ provides no insight into what are the "other reasons" to which he refers. Specifically, he does not attribute plaintiff's isolation to his mental limitations, because the ALJ already found that someone so suffering should have more treatment records than the plaintiff does.

S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir.1987). "Even if the Court finds that the evidence weighs against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence." *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir.1981); *see also Harwell v. Heckler*, 735 F.2d 1292 (11th Cir.1984); *Martin v. Sullivan*, 894 F.2d 1520 (11th Cir.1990).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper

legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987). When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ determined that the plaintiff had the residual functioning capacity to perform work at the "light" level of unskilled work, apparently based solely on his own hypothetical. No medical opinion supports the limitations supposed by the ALJ. No medical opinion regarding the plaintiff's ability to perform light level, or any other level, work appears anywhere in the record before this court.

The sole opinion regarding plaintiff's mental abilities is the intake form from July 2006 assigning plaintiff a GAF of 35-40. The ALJ had a duty to consider this evidence in combination with the plaintiff's impairments, including the clearly documented medical opinions that the plaintiff suffers from anxiety and PTSD as well as depression. "An ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993), citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987); *Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir.1986); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984). The Eleventh Circuit stated, "it is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment." *Id*., quoting *Bowen v. Heckler*, 748 F.2d at 634 (citing *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.1980)). Here, the ALJ failed to do so. Any such limitations were absent from the hypothetical posed to the VE. Thus, the hypothetical did not reflect all of the plaintiff's limitations as required. *See e.g., Smith v. Social Security Admin.*, 2008 WL 879980, 10 (11th Cir.2008), citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) ("to constitute substantial evidence, the VE's testimony must be based on a hypothetical posed by an ALJ which encompasses all of the claimant's impairments"). The court therefore finds that the hypothetical to the VE was not

sufficient for purposes of establishing that the plaintiff could perform a limited range of light work as set forth by the ALJ.

Given the paucity of medical evidence, especially taken with the plaintiff's testimony that he did not follow through with the mental health referral because he could not afford it, referrals for physical and mental consultative evaluations would have been appropriate. The Commissioner has a duty to develop a full and fair record. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir.1990). This did not occur in this case. Sorely lacking from the extensive medical records is any medical opinion as to how the plaintiff's numerous impairments impact his ability to engage in a variety of everyday activities. This could and should have been addressed through consultative evaluations.

The ALJ further penalizes the plaintiff for not following the referral for mental health treatment, even though the plaintiff testified he did not because he could not afford it. The ALJ disregards this testimony, instead surmising that all individuals with severe mental impairments should have records of intensive mental health treatment (R. 18). "[When] the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment."

*Dawkins v. Bowen*, 848 F.2d 1211, 1214 (11th Cir.1988).  No such consideration was given to the plaintiff.

The ALJ also discounted plaintiff's treating physician's records containing numerous diagnoses because the specific ailments were not mentioned frequently enough.  *See* R. 20.  Thus, the ALJ ignored the diagnoses of chronic anxiety, post-traumatic stress syndrome, arthritis and osteoarthritis.  The ALJ also ignored the plaintiff's testimony his hands, wrists and fingers hurt to a point he cant hold a tool (R. 48).  However, the law requires an ALJ to evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir.1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir.2001).

Although the plaintiff bears the burden of proof to prove disability, the ALJ does have a duty to fully develop the record.  *See* 20 C .F.R. §§ 416.919a(b)(1),

416.919a(b)(4); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir.1990). Because of the paucity of medical records in the plaintiff's file, and the plaintiff's testimony that he cannot afford to pursue mental health treatment, the ALJ should have referred the plaintiff for consultative examinations. *Reeves v. Heckler,* 734 F.2d 519, 522 n.1 (11th Cir.1984)("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision"), citing *Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 69 (5th Cir.1981) (Unit B).

The court further finds the evidence regarding what the plaintiff could do in the realm of "substantial gainful employment" to be severely lacking. There are no medical opinions regarding whether the plaintiff can perform the mental and physical requirements of any job. No evidence supports the limitations posited by the ALJ, but there is also not sufficient evidence in the record from which this court can find that the substantial evidence mandates a finding of disability.

The ALJ does not point to any activities of the plaintiff's which would refute his claimed limitations. Rather, plaintiff's claimed limitations and his daily activities are in line with each other. The plaintiff testified that his normal day consisted of sitting in his bedroom. From this the ALJ extrapolates that the plaintiff can perform a limited range of light work.

The Commissioner has a duty to develop a full and fair record.  *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir.1990).  This did not occur in this case.  Sorely lacking from the extensive medical records is any medical opinion as to how the plaintiff's numerous impairments impact his ability to engage in a variety of everyday activities.  This could and should have been addressed through consultative evaluations.

This court cannot conclude that the ALJ's finding that the plaintiff can perform a limited range of light work is supported by substantial evidence.  Records in evidence at the time the ALJ rendered his decision support a conclusion that the plaintiff does have significant limitations.

The failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.  *Cornelius*, 936 F.2d at 1145-46.  Given the evidence before this court, the court is unable to determine that the proper legal analysis has been conducted.  As such, this court must reverse the decision of the ALJ.  However, the court is unable to conclude from the evidence before it that the plaintiff is completely disabled, and can perform no substantial, gainful employment.  Therefore, the court will remand this case to the ALJ to obtain both physical and mental consultative

evaluations, for further consideration of the evidence, proper application of the law, and any further development of the record deemed necessary for these purposes.

## Conclusion

Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency for further action consistent with this opinion, as set forth herein.

**DONE** and **ORDERED** this the 31st day of August, 2010.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE